**Wallace HURT, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 29, 1964.

George Street Boone, Elkton, John O. Hardin, Hopkinsville, for appellant.

Robert F. Matthews, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Wallace Hurt, age fifty-five was found guilty under KRS 435.105 of indulging in immoral and indecent practices with the body of Shirley Poe, a child under the age of fifteen years. He was sentenced to one year's confinement in the penitentiary.

Hurt lived with wife on an eighty-five acre farm on the Blue and Gray State Park Road in Todd County. The home of Ewell Poe was located on the same road about eleven hundred feet from Hurt's farm. The neighbors were well acquainted. The Poe family consisted of Ewell and Rosa Poe, the parents, and nine children. The children often used the Hurt farm as a playground. They had built small houses on the grounds and were constantly passing back and forth between the farms. The family often ate with the Hurts at their home.

Shirley Poe testified that her brothers and sisters had planted some carrots on Hurt's farm and that about noon one day in June she crossed the farm on the way to visit the patch. She stated that she was intercepted by Hurt who asked her, "Could he do something"? Then he grabbed her, took her to the ground where he lowered to the ankles the bluejeans and undergarment she was wearing and placed his hand on her genitals and breast. She scratched him and he turned her loose. She raised no hue or cry and did not mention the incident to her parents.

In December of the same year, the Poes were visited by Ewell Poe's niece, Dorothy Price, and her husband, John Price. A short time later, Rosa Poe, the mother, questioned Shirley who then, for the first time, related that Hurt had molested her. Ewell Poe arrived home about five p. m. with John Price. About two hours later, Mrs. Poe made a telephone call to Mrs. Hurt, stated that something bad had happened and asked if she and Mr. Hurt would come over. The Hurts were accustomed to being called by the Poes in an emergency and they rushed over immediately by car. Mr. Hurt entered the house first and when he crossed the threshold, Price hit him and he fell back against the door. Poe then held him while Price administered a severe beating to him. Hurt stated that not a word had been said and he did not know what it was all about. After he fell to the floor, they made the accusations. Poe stood over him with a poker in his hand and said he would kill him. While he was on his hands and knees, Shirley Poe was brought in to confront him. Shirley said only: "Mr. Wallace, you know it's so." Hurt at no time admitted or denied the charge. He said, "I had no alternative. Either way I said it, it would have been death." The only word said in the house by Hurt was, "Call the law."

On this appeal, appellant urges many grounds for reversal. The arguments overlap in several instances, so in this discussion we will combine some of them.

■ Appellant insists that the defendant in a criminal proceeding cannot be compelled to give evidence against himself. We agree—Kentucky Constitution, § 11— but appellant has failed to demonstrate when the defendant in this case was so coerced. The argument that appellant was forced to incriminate himself seems to be based upon the incidents which occurred at the Poe house, when Hurt responded to their summons and was severely beaten after his arrival. He certainly did not incriminate himself on that occasion because he was mute and gave no evidence

against himself. In any event, the evidence of this incident was introduced without objection and the witnesses who testified were subjected to severe cross-examination. In addition, appellant voluntarily took the stand in his own defense and freely delineated the facts of the occurrence.

It is next argued that a confession is not admissible against a defendant when obtained by hope or fear, sweating or threats, or by physical violence upon his person. We again agree. But from this premise is drawn the conclusion that no part of the testimony of any witness for the commonwealth concerning the events which took place at the Poe residence should have been admitted in evidence. In the first place no confession was obtained at the Poe residence. The reason why appellant may not rely upon the introduction of said testimony was given in the paragraph next above. We are not, however, specifically holding that such testimony was incompetent.

■ The next averred error is based upon the statement that a commonwealth's attorney is not permitted to comment on a defendant's refusal to admit or deny a charge and a defendant's failure to testify does not create any presumption against him. We think the answer to this is self-evident. Appellant took the stand and testified. In addition, the argument by the commonwealth's attorney was not reported. No affidavit was filed concerning this point. Later in this opinion we will discuss other points concerning the arguments of the commonwealth's attorney.

■ It is next charged that the judge used an improper method to discharge the thirteenth juror. It is stated in a verified motion for a new trial, and in appellant's brief, that the court failed to comply with RCr 9.32. This rule provides that if the membership of the jury consists of more than the number required by law after it has been instructed by the court, the clerk in open court shall place the name of each juror on a separate piece of paper, fold it so as to conceal the name and put it in a box provided for that purpose. The clerk after mixing the names shall draw from the box sufficient names (one or two, as the case may be) to reduce the jury to the number required by law. In the instant case the court selected the juror to be discarded as follows: The name of each of the thirteen jurors was written on the back of an old campaign card. The names were turned over and held by the judge as if he were holding a deck of cards in both hands. The judge instructed the clerk to draw one card, which he did, and the juror named on the card was dismissed. This practice did not follow the simple procedure set out in the rules. It is not necessary, however, for us to pass on whether this action was prejudicial because it was not shown that appellant objected to this method of procedure.

■ In a number of instances appellant complained that incompetent evidence was introduced, but objections to that evidence were not properly preserved. There is one instance which we believe requires comment. Dorothy Price reported that at the time of the incident at the Poe house she said: "What would you think if a man bothered a seven year old child"?

"OBJECTION by Hon. John O. Hardin Sr. Attorney for Defendant: 'Judge, we move to exclude that.'

"Hon. Thomas A. Noe, Jr., Judge: 'This is the trial'—

"Hon. John O. Hardin, Sr., Attorney for Defendant: 'I think maybe you had better talk to this witness before we proceed any further, Don't you think so?'

"Hon. James C. Lyne, Attorney for the Commonwealth: 'I think she will control her emotions.'

"Witness: 'I am sorry, I was just repeating what was said.'

"Hon. Thomas A. Noe, Jr., Judge: 'Please confine your evidence to this case.'"

This particular subject was not pursued.

It is argued, in connection with this statement of Mrs. Price that it was an attempt to adduce evidence of a distinct and separate crime. We cannot view it in that light. The matter was not pursued and there was no attempt to identify the person or the occasion; in fact, the question seems to ring of the rhetorical. We think the objection was waived after the court instructed the witness to confine her evidence to this case and the subject was dropped.

The witness was questioned about other subjects. At the end of her testimony appellant moved for a mistrial "due to the fact that Mrs. Price brought in some testimony about a seven year old child in connection with this indictment." We believe this statement, at most, should have required only an admonition which was not specifically requested, but was in effect given. We cannot find substance for a belief that it was of sufficient importance to warrant the discharge of the jury.

█ It is contended that the commonwealth's attorney used improper and inflammatory arguments in presenting the case to the jury. The final argument to the jury was not reported. The motion for a new trial—and that motion was verified by the appellant—sets out a number of statements purportedly made by the commonwealth's attorney which appellant found to be objectionable. However, it is not stated in the grounds for a new trial that appellant objected to any of these statements at the time they were made. The propriety of the statements, therefore, was not presented to the trial court for determination and is not properly before us on appeal.

█ Finally it is argued that the court should have directed a verdict for the appellant because the story of the child was uncorroborated and vague in most details and had been elicited many months after the supposed date of the offense, at the suggestion of her parents and others. In Carrier v. Commonwealth, Ky., 356 S.W.2d 752, this was said:

"Since the time of Lord Hale, who admonished, 'it must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent,' the courts have been disturbed by a situation where a word may be substituted for definite proof of an act. The various states have found different solutions: in some states, by statute, the testimony of the prosecutrix must be corroborated; in some jurisdictions no corroboration is necessary. See 44 Am.Jur., Rape, § 106. In still other jurisdictions, which include this one, the uncorroborated testimony of the prosecutrix may be sufficient to sustain a conviction of rape if the proof is clear and convincing and the surrounding circumstances are such as to indicate the probable guilt of the accused or, at least, to corroborate indirectly her testimony. However, if the story of the prosecutrix is intrinsically improbable or her actions before and after the time of the alleged offense are such as indicate (when considered in the light of ordinary rules of behavior) that the related event did not happen—then the uncorroborated testimony is not sufficient."

Here we are faced with a question of whether our notion concerning the actual happening can be substituted for that of the trial court and the jury. Under the circumstances we cannot say the story of the prosecutrix is intrinsically improbable or that her behavior afterwards was such as would indicate that the event did not happen. She testified that she had said nothing about it because Poe had threatened

**730**

to kill her if she did. It was the terrible responsibility of the jury who had the opportunity to observe the behavior of these parties to decide whether she was telling the truth in this case. We do not believe that the delay in reporting the incident was conclusive.

Judgment affirmed.