James Brian BENNETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–225–MR.

Supreme Court of Kentucky.

Sept. 3, 1998.

Rehearing Denied Nov. 19, 1998.

Donna L. Boyce, Appellate Branch Manager, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler, III, Attorney General, Frankfort, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

COOPER, Justice.

Appellant was convicted in the Scott Circuit Court of one count of wanton murder and one count of complicity to first-degree robbery. He was sentenced to concurrent terms of forty years for the murder conviction and twenty years for the robbery conviction. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and raises three claims of error: (1) failure to change venue; (2) introduction of victim impact testimony during the guilt phase of the trial; and (3) double jeopardy.

On September 19, 1994, Appellant and Joshua Cheng were driving through Kentucky on their way from South Carolina to Michigan when they ran out of gas, oil, and money. According to Appellant, Cheng decided to rob the Shell One Stop near I–75 in Scott County and forced Appellant to participate in the robbery against his will. According to Cheng, the two mutually agreed to rob the store, but not to shoot the clerk unless she did something, such as going for a gun or pushing an alarm. The .22 caliber revolver used in the robbery belonged to Appellant, but Cheng actually carried the weapon into the store and shot and killed the clerk during the course of the robbery. Appellant then emptied the contents of the cash register into a pillowcase and the two men fled the scene. They later divided the money and proceeded on to Michigan. In January 1996, Appellant and Cheng were arrested in South Carolina and returned to Scott County for trial. In June 1996, Cheng entered a plea of guilty in exchange for a recommendation of life in prison without benefit of probation or parole for twenty-five years for the murder, and twenty years for the robbery, with the sentences to run concurrently. Appellant's trial was held in January 1997.

## I. FAILURE TO CHANGE VENUE.

Appellant claims that the pre-trial publicity in this case, both by the media and by word of mouth, prevented him from obtaining a fair trial. With his petition to change venue, Appellant filed twelve newspaper articles and the results of a poll taken of Scott County residents. The dates and number of the newspaper articles are as follows:

| Month/Year of Article | Number |
| --- | --- |
| January 1996 | 5 |
| February 1996 | 1 |
| April 1996 | 2 |
| May 1996 | 2 |
| June 1996 | 2 |

The articles generally recounted the facts of the murder and robbery, that Appellant and Cheng had been arrested in South Carolina and indicted in Scott County, and that Cheng entered a guilty plea to the murders and was expected to testify against Appellant. All of this information was admissible and was introduced at trial. Appellant did not deny participating in the robbery, but relied on the defense of duress. Thus, the media publicity only informed prospective jurors of uncontested facts, most of which would be revealed to them during voir dire.

The poll submitted in support of the petition for a change of venue showed that 85.7% of Scott County respondents had some familiarity with the case and 61% expressed an opinion about it. However, 79% believed that Appellant could get a fair trial in Scott County. Each of the fifteen jurors seated to hear the case had heard about or discussed it, but none purported to have an opinion as to Appellant's guilt or innocence. Only two prospective jurors were challenged for cause

and both were excused. Another was removed by the trial judge *sua sponte* after the juror advised that he had formed an opinion about the case.

█ A change of venue is not warranted by the mere fact that jurors may have heard, talked, or read about the case, absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant; and prejudice must be shown unless it may be clearly implied in a given case from the totality of the circumstances. *Montgomery v. Commonwealth,* Ky., 819 S.W.2d 713, 716 (1991); *Brewster v. Commonwealth,* Ky., 568 S.W.2d 232, 235 (1978); *see also Foley v. Commonwealth,* Ky., 942 S.W.2d 876, 881 (1996), *cert. denied,* — U.S. ——, 118 S.Ct. 234, 139 L.Ed.2d 165 (1997). There was no showing or clear implication that public opinion was so aroused as to preclude a fair trial in this case. *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384, 387 (1985), *reversed sub nom. on other grounds, Kordenbrock v. Scroggy,* 919 F.2d 1091 (6th Cir.1990). The vast majority of the newspaper articles generated about this case occurred long before the case was tried and were not so numerous or inflammatory as to render Appellant's trial fundamentally unfair. *Foley v. Commonwealth, supra,* at 880.

█ "Change of venue is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion." *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293, 299 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997); *see also Mu'Min v. Virginia,* 500 U.S. 415, 427, 111 S.Ct. 1899, 1906, 114 L.Ed.2d 493 (1991); *Foley v. Commonwealth, supra,* at 884. "A trial court's decision in this area is given great weight because of its presence in the county." *Brown v. Commonwealth,* Ky., 890 S.W.2d 286, 289 (1994). The evidence of pretrial publicity in this case was not so pervasive as to indicate that the trial judge abused his discretion in denying a change of venue. As in *Kordenbrock v. Scroggy, supra,* not a single juror or alternate seated in this case had expressed an opinion that Appellant was

guilty of the charged offenses. *Compare Jacobs v. Commonwealth,* Ky., 870 S.W.2d 412 (1994).

## II. VICTIM IMPACT EVIDENCE.

█ The victim's mother was called to the stand for the purpose of "humanizing" the victim. She testified briefly that the victim was twenty-two years old, employed, and the mother of two children, ages one and three. When asked how the children were doing, she replied that the younger child was doing fine, but the older child was having some psychological problems coping with the absence of his mother.

█ The introduction by the prosecution of "a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime." *Foley v. Commonwealth,* Ky., 953 S.W.2d 924, 937 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1375, 140 L.Ed.2d 522 (1998).

> A murder victim can be identified as more than a naked statistic, and statements identifying the victims as individual human beings with personalities and activities does not unduly prejudice the defendant or inflame the jury. Just as the jury visually observed the appellant in the courtroom, the jury may receive an adequate word description of the victim as long as the victim is not glorified or enlarged.

*Bowling v. Commonwealth, supra,* at 302–03 (1997) (citation omitted). However, while the Commonwealth is entitled to show the jury that the victim was not a mere statistic, but a living person, *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519, 523 (1984), *cert. denied,* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), we have expressed disapproval of the introduction of victim impact evidence during the guilt phase of a trial. *Ice v. Commonwealth,* Ky., 667 S.W.2d 671, 676 (1984), *cert. denied,* 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984). The reason, of course, is that such evidence is generally intended to arouse sympathy for the families of the victims, which, although relevant to the issue of penalty, is largely irrelevant to the issue of guilt or innocence. We reiterate that this type of evidence should be reserved for the

penalty phase of the trial. *Compare Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991) and *Bowling v. Commonwealth, supra*, at 303, holding that it was not error to permit victim impact evidence during the sentencing phase of a trial.

In *Payne v. Tennessee, supra*, the testimony was virtually identical to that given by the victim's mother in this case, *i.e.*, that the child missed his mother and baby sister. *Id.* at 826, 111 S.Ct. at 2609.

> [T]he testimony illustrated quite poignantly some of the harm that Payne's killing had caused; there is nothing unfair about allowing the jury to bear in mind that harm at the same time as it considers the mitigating evidence introduced by the defendant.... "It is an affront to the civilized members of the human race to say that at sentencing in a capital case, a parade of witnesses may praise the background, character and good deeds of Defendant (as was done in this case), without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims."

*Id.*, quoting *State v. Payne*, 791 S.W.2d 10, 19 (Tenn.1990).

In fact, Appellant was permitted to introduce substantial mitigating evidence during the guilt phase of this trial. His expert psychologist testified by proxy that Appellant was married, had a child of his own, and wanted more children. The psychologist also testified that Appellant engaged in daily prayer and Bible reading, attended religious services twice a week, sang in the choir, and desired to serve his country through military service. In support of his opinion that Appellant was not a violent person, the psychologist testified that Appellant told him: "I wish I had lived for the Lord better when I was younger instead of looking just to get by with it." In addition to the psychologist, Appellant produced two religious ministers and a local South Carolina law enforcement officer to testify to his good character. In view of this barrage of mitigating evidence about Appellant's own family and good character, we do not believe that an isolated comment about the impact of the victim's death on one of her children so prejudiced Appellant as to deny him a fair trial. Thus, the admission of this evidence was harmless error. RCr 9.24; *Harman v. Commonwealth*, Ky., 898 S.W.2d 486 (1995); *Renfro v. Commonwealth*, Ky., 893 S.W.2d 795 (1995); *Richardson v. Commonwealth*, Ky.App., 559 S.W.2d 738 (1977). That is particularly true in this case where Appellant admitted his involvement in the crime, but relied on the defense of duress.

Appellant also complains that the prosecutor commented during closing argument about the pain and suffering endured by the victim's family because of her death. However, there was no objection to this comment; thus, this claim of error is not preserved. RCr 9.22; *Hurt v. Commonwealth*, Ky., 379 S.W.2d 726 (1964); *Patterson v. Commonwealth*, Ky.App., 555 S.W.2d 607 (1977).

### III. DOUBLE JEOPARDY.

The instruction on wanton murder informed the jury that it could convict Appellant of that offense if it believed beyond a reasonable doubt that by "participating in the robbery," Appellant was wantonly engaging in conduct which created a grave risk of death to another and that he thereby caused the victim's death under circumstances manifesting an extreme indifference to human life. KRS 507.020(1)(b). Defense counsel specifically stated on the record that he had no objection to this instruction or to the instruction on first-degree robbery. However, immediately upon the return of the guilty verdicts, counsel moved to dismiss the robbery conviction on double jeopardy grounds. He posits that under the wording of the wanton murder instruction, robbery should have been considered not as a separate offense, but as a lesser included offense of wanton murder. KRS 505.020(1)(a).

Prior to the adoption of the penal code, Kentucky espoused the concept of "felony murder," which was usually described as follows:

> Homicide is murder if the death ensues in consequence of the perpetration or attempted perpetration of some other felony

unless such other felony was not dangerous of itself and the method of its perpetration or attempt did not appear to involve any appreciable human risk.

R. Perkins, *Criminal Law* 36 (1st ed. Foundation Press 1957). The intent to commit the dangerous felony provided the element of intent necessary to convict of the homicide. "The turpitude of the act contemplated is by implication of law transferred to the homicide which actually is committed so as to make the latter offense a killing with malice, contrary to the real fact of the case as it appears in evidence." *Tarrence v. Commonwealth*, Ky., 265 S.W.2d 40, 51 (1953), quoting 26 Am.Jur. *Homicide* §§ 188, 309 (1940). Thus, the intent to engage in the underlying dangerous felony created an almost strict liability with respect to a murder committed during its commission. R. Lawson and W. Fortune, *Kentucky Criminal Law* § 8–2(d)(1). The United States Supreme Court held in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) that when a "conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one." *Id.* at 682, 97 S.Ct. at 2913.

▮ With the adoption of the penal code, the felony murder doctrine was abandoned as an independent basis for establishing an offense of homicide in Kentucky. KRS 507.020 (1974 Commentary). However, participation in a dangerous felony may constitute wantonly engaging in conduct creating a grave risk of death to another under circumstances manifesting an extreme indifference to human life, thus permitting a conviction not only of the dangerous felony, but also of wanton murder. Intent is not an element of wanton murder. Thus, the conviction of robbery is unnecessary to prove the mens rea required to convict of murder. Rather, the facts proving the element of endangerment necessary to convict of first-degree robbery may be the same facts which prove the element of aggravated wantonness necessary to convict of wanton murder. Such does not constitute double jeopardy.

▮ In *Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1997), *cert. denied sub nom.*, *Effinger v. Kentucky*, — U.S. —, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997), we returned to the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and KRS 505.020 for determining when a single course of conduct may establish more than one offense. That test is whether the conduct violates two distinct statutes and, if so, whether each statute requires proof of an element that the other does not. *Burge*, 947 S.W.2d at 811. The death of the victim is an element necessary to convict of wanton murder, KRS 507.020(1)(b), but is not required to convict of first-degree robbery. Theft or attempted theft is an element necessary to convict of first-degree robbery, KRS 515.020(1), but is not required to convict of murder. It is the element of assault (or wanton endangerment) which is common to both offenses. Under the felony murder doctrine, proof of both elements of the offense of robbery was necessary to effect the transfer of intent necessary to convict of intentional murder. However, the theft element of robbery is irrelevant to a charge of wanton murder, since mere theft or attempted theft would not constitute the type of aggravated wantonness necessary to create a grave risk of death under circumstances manifesting an extreme indifference to human life.

The same argument raised here by Appellant was also rejected in *Kruse v. Commonwealth*, Ky., 704 S.W.2d 192, 195–96 (1986). And in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the United States Supreme Court clarified that in *Harris v. Oklahoma, supra*, it was necessary to prove all of the elements of the underlying offense of robbery in order to convict of felony murder under Oklahoma law. 509 U.S. at 706–07, 113 S.Ct. at 2861. In the case *sub judice*, proof of the theft element of robbery was not necessary to convict Appellant of wanton murder.

▮ Perhaps the instruction on wanton murder would have been more accurate if it had described the dangerous conduct constituting aggravated wantonness as, *e.g.*, "agreeing to participate in the commission of a theft knowing that another person would be threatened with a deadly weapon during

the course of that theft," rather than as "participating in the robbery." However, defense counsel, for strategy reasons, specifically waived any objections to the guilt phase instructions as written. The obvious strategy was to leave the robbery count in the instructions in the hope that if the jury did not acquit, it might convict only of robbery, but not murder; then claim double jeopardy if the jury returned convictions of both offenses. However, convictions of both wanton murder and first-degree robbery do not constitute double jeopardy under the facts of this case. Any claim of error in the wording of the wanton murder instruction was waived by the failure to either object or tender a desired instruction. RCr 9.54(2). There was no palpable error, RCr 10.26, because requiring the jury to find both elements of robbery in order to convict of wanton murder, instead of just the assault element, placed a higher burden of proof on the Commonwealth and thereby inured to the defendant's benefit. *Baze v. Commonwealth*, Ky., 965 S.W.2d 817, 823 (1997); *Barbour v. Commonwealth*, Ky., 824 S.W.2d 861 (1992), *overruled on other grounds, McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518 (1994).

Accordingly, the judgments of conviction and sentences imposed by the Scott Circuit Court are affirmed.

All concur.