RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0212-MR

JOHN W. CARIEL                                                                    APPELLANT

v.
APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 18-CR-00110

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, EASTON, AND McNEILL, JUDGES.

CALDWELL, JUDGE: After a jury trial, John W. Cariel (Cariel) was convicted by the Grayson Circuit Court of one count each of third-degree sodomy, first-degree sexual abuse, and distribution of obscene material to minors. He received a total sentence of ten years. Cariel appeals his conviction as a matter of right, asserting trial errors. We affirm.

**FACTS**

In 2017, Cariel was employed teaching sixth grade at Grayson County Middle School in Leitchfield, Kentucky. Cariel had been employed in the same position for about twenty years. T.F. and E.H.[1] were minors who resided in Grayson County. Both were students at Grayson County schools.

T.F.[2] was 15 years old and attended Grayson County High School in the spring of 2017. Previously, T.F. had been a student of Cariel's. Sometime that spring, T.F. began to exchange electronic messages with a person he eventually learned to be Cariel while using "Grindr." Grindr is a web-based dating application used on cellular devices which connects users by geographic location.

After sending one another messages identified only by anonymous user I.D. names, Cariel and T.F. exchanged photographs of one another. T.F. recognized Cariel and asked him whether he was a teacher. Cariel affirmed this, T.F. then identified himself as a former student and indicated he was 16 years old,

---

[1] While the students involved in this matter are now adults, they were juveniles at the time of the events described herein and per Rules of Appellate Procedure (RAP) 5(B)(2), their names will be initialized.

[2] T.F., now an adult, was a juvenile at the time of his communications with Cariel. T.F. identified as female and had her name legally changed to A.F. by the time of trial. However, at the time of the allegations in this case, she identified as male. The Court will refer to T.F. in this Opinion as "he" and "him," not in disregard of A.F.'s subsequent identity, but for consistency with the record below.

despite being 15. Following this, Cariel sent a photo of his exposed penis to T.F., as well as messages inquiring into the possibility of the two "hooking up."

E.H. was attending Grayson County Middle School, where Cariel taught, in 2017. His thirteenth birthday had occurred in January of that year. Sometime in the fall, using Grindr, Cariel and E.H. arranged to meet in the parking lot of Major's Trucking in Caneyville, Kentucky. Cariel drove to the location at the arranged time in a blue SUV. While waiting in his vehicle, Cariel saw E.H. in the parking lot and signaled by flashing his lights. As E.H. approached, Cariel opened his vehicle door. Anticipating sexual activity, Cariel had exposed his penis prior to opening the door. As E.H. entered the vehicle, he briefly performed oral sex upon Cariel. After E.H. ceased performing oral sex upon him, Cariel stepped out of his vehicle and masturbated in front of E.H.

In the following calendar year, on or about May 11, 2018, a Grayson County High School student alleged to the school counselor an improper sexual relationship between Cariel and a male student. The school counselor reported this allegation to the Leitchfield Police Department ("LPD"). LPD Officer Ian Renfro, who worked as a school resource officer for Grayson County Schools, investigated the matter. On May 11, 2018, after speaking to the student who reported the allegation, Officer Renfro interviewed T.F. During the interview, T.F. showed

Officer Renfro images he had saved on his cellphone of messages Cariel had sent him using Grindr. As a result, Officer Renfro took possession of T.F.'s cellphone.

Through the interview with T.F., Officer Renfro learned of allegations concerning Cariel and E.H. Soon thereafter, Officer Renfro located and interviewed E.H. about Cariel. On May 15, 2018, Cariel gave a statement at the police department to Officer Renfro and Capt. Brandon Hook regarding the allegations. Before the interrogation concluded, Cariel admitted to sending a photograph of his exposed penis to T.F., allowing E.H. to perform oral sex upon him, and masturbating in front of E.H. However, Cariel insisted he had been unaware of either T.F. or E.H. being underage. After his admissions, Cariel was arrested and charged with sexual abuse in the first degree, sodomy in the second degree, and distribution of obscene material to minors.[3]

At trial, Cariel argued he had no reason to be aware of either victim being under legal age. His defense revolved largely around discussion of Grindr, the social media app Cariel had utilized to communicate with the victims. Testimony at trial indicated a user was prompted to indicate their being over 18 years old by entering a birthdate when signing up for a Grindr account. Cariel alleged T.F. and E.H. had "deceived" him by entering false birthdates for their

---

[3] Cariel was also charged with prohibited use of an electronic monitoring system to procure a minor to commit a sexual offense, but the charge was later dropped.

accounts. Furthermore, Cariel's testimony indicated he understood Grindr to be customarily used by adult gay males to facilitate meetings for anonymous sex.

Cariel alleged being further deceived by T.F.'s indicating he was 16 years old when he was really 15. In testimony, Cariel admitted he told E.H. he looked "really young" and inquired whether he was in the eighth grade during their meeting in the parking lot. However, Cariel insisted this took place only *after* E.H. had performed oral sex upon him and he had masturbated in front of E.H. As a result of the parking lot's lights being behind E.H. as he approached, Cariel testified, and the vehicle's interior lights remaining dim even with the door opened, he never got a look at E.H.'s face prior to the sexual acts. This conflicted with the prior testimony of E.H., who testified Cariel had asked him whether he was in eighth grade upon his approaching the car and *prior* to any physical contact.

Cariel was convicted of first-degree sexual abuse and a lesser charge of third-degree sodomy and distributing obscene matter to a minor. The jury recommended a sentence of five (5) years on the sexual abuse and sodomy charges, to run consecutively to each other, and twelve (12) months on the obscenity charge, to run concurrent as a matter of law, for a total sentence of imprisonment of ten (10) years. The trial court imposed the sentence recommended by the jury. Cariel appeals. We affirm.

# STANDARD OF REVIEW

Cariel makes two allegations of preserved error regarding the trial court's rulings – one regarding denial of a directed verdict and another regarding denial of a motion to exclude evidence.

For evidentiary rulings, the standard of review is abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

As to the trial court's denial of the motion for a directed verdict on one of the counts, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

Cariel additionally raises several instances of unpreserved allegations of error. For errors not preserved for our review, the standard of review is the same: only when manifest injustice occurs may palpable error be found, and an unpreserved error reversed.

> For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. A palpable error must involve prejudice more egregious than that occurring in reversible error. A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus,

what a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been different without the error. If not, the error cannot be palpable.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks, brackets, and citations omitted).

## ANALYSIS

We first will review the instances of preserved error, beginning with the ruling on Cariel's motion for a directed verdict of acquittal on the first-degree sexual abuse count.

### Directed Verdict

The Commonwealth indicted Cariel for one count of sexual abuse, the basis of which was masturbating in the presence of E.H., who was less than sixteen (16) years of age at the time. This offense is articulated in KRS[4] 510.110(c)2.:

(c) Being twenty-one (21) years old or more, he or she:

2. Engages in masturbation in the presence of another person who is less than sixteen (16) years old and knows or has reason to know the other person is present[.]

---

[4] Kentucky Revised Statutes.

Cariel argues he was entitled to a directed verdict pursuant to KRS 510.030, which provides a defense to certain offenses where the victim is deemed incapable of consent:

> In any prosecution under this chapter in which the victim's lack of consent is based solely on his or her incapacity to consent because he or she was, at the time of the offense:
>
>> (1) Less than sixteen (16) years old; . . .
>
> the defendant may prove in exculpation that at the time of the conduct constituting the offense he or she did not know of the facts or conditions responsible for such incapacity to consent.

While KRS 510.110(c)2. does not explicitly reference lack of consent as an element, KRS 510.020(1) provides "(w)hether or not specifically stated, it is an element of every offense defined in this chapter that the sexual act was committed without consent of the victim."

Cariel bore the burden of proof of this defense under KRS 500.070(3): "The defendant has the burden of proving an element of a case . . . if the statute which contains that element provides that the defendant may prove such element in exculpation of his conduct."

The denial of a motion for directed verdict merits a reversal only if the appellate court determines "it would be clearly unreasonable for a jury to find guilt." *Benham*, 816 S.W.2d at 187. Confronted with a motion for directed

verdict, the trial court must assume the truth of the Commonwealth's evidence and "draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id*. Questions regarding the weight of the evidence and credibility of witnesses are reserved for the jury. *Id*. A conviction must be based on "evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id*. at 187-88.

The record indicates it was not unreasonable for a jury to find Cariel failed to prove he was unaware of E.H. being less than 16 years of age. More than sufficient evidence, upon which the jury might have based such a finding, was presented during trial. The jury saw and heard evidence E.H., in 2017, presented as a child who did not appear older than his age. A yearbook photo of E.H. from the school year he was 13 was entered as an exhibit. Officer Renfro testified concerning the yearbook photo and confirmed it accurately portrayed E.H.'s appearance even by the time of the 2018 investigation. Cariel's testimony that he had believed all users of Grindr were at least 18, including E.H., was undercut by his admission T.F. had already indicated being under 18 in a Grindr message, prior to any contact Cariel had with E.H.

Although Cariel testified he did not get a good look at E.H.'s face until after he had already masturbated in his presence, Cariel's own testimony

-9-

confirmed E.H.'s appearance on that date prompted Cariel to comment on his youthful appearance and ask E.H. whether he attended the eighth grade. Cariel's defense required the jury to believe Cariel's assertion the lighting of the environment totally obscured his ability to get a look at E.H. before, as well as during, very close sexual contact. However, E.H. testified Cariel asked whether he was in eighth grade immediately upon his approaching Cariel's vehicle and *prior* to any sexual contact.

We discern no reversible error in the trial court's denying the motion for a directed verdict and the finding of guilt was not unreasonable. We affirm the trial court's denial of directed verdict on this count.

### Interrogation Video

Moving to the only other preserved allegation of error, Cariel alleges the trial court erred in denying his motion for redactions from the police interrogation video. We find no abuse of discretion.

On the morning of May 24, 2022, the second day of trial, Cariel filed a Motion to Exclude, requesting redaction of four portions of the police interrogation video. Oral argument occurred that same morning. Cariel requested exclusion of the interrogating officers' statements during the interview: "that this would be a memorable event if it were him," "there is no way I can make that look innocent," insisting E.H. clearly looked like a child, and that Cariel was lying to

-10-

them. After hearing arguments of the parties, the trial court denied Cariel's motion, citing to the motion's untimely filing but also indicating consideration was given to matters of relevance and probativeness.

Cariel argues the trial court abused its discretion in denying his motion to redact those statements from video played for the jury. He characterizes these portions of the interrogation as violative of KRE[5] 403, arguing the statements of the officers during the interrogation are more prejudicial than probative. The statements Cariel objects to occurred within a specific and unique context – that of a criminal defendant's recorded police interrogation.

In *Lanham v. Commonwealth*, 171 S.W.3d 14 (Ky. 2005), the Kentucky Supreme Court addressed a similar argument regarding allegations of untruthfulness made by an interrogating police officer to the accused. *Id.* at 27. The Court articulated the distinction to be made when "such comments are part of an interrogation technique aimed at showing the defendant that the officer recognizes the holes and contradictions in the defendant's story, thus urging him or her to tell the truth." *Id.*

> Almost all of the courts that have considered the issue recognize that this form of questioning is a legitimate, effective interrogation tool. And because such comments are such an integral part of the interrogation, several courts have noted that they provide a necessary context for the defendant's responses. We agree that such

---

[5] Kentucky Rules of Evidence.

recorded statements by the police during an interrogation are a legitimate, even ordinary, interrogation technique, especially when a suspect's story shifts and changes. We also agree that retaining such comments in the version of the interrogation recording played for the jury is necessary to provide a context for the answers given by the suspect.

*Id*.

Cariel also alleges the officers' accusing him of lying or being a liar constitutes KRE 404(a) evidence "not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" However, as the Commonwealth points out, the prosecution filed a notice of its intention to introduce the interrogation recording as an admission of a party opponent under KRE 801A(b)(1) and consistently treated the video as such throughout the proceedings. Reviewing the record at hand, the trial court did not err in treating the interrogation video as an admission of a party opponent.

Lastly, Cariel suggests because one of the officers who appeared in the interrogation video did not testify at the trial, his rights to confront his accusers under the Sixth Amendment were violated. This allegation of error regarding the interrogation video is unpreserved. Though Cariel did object to the officer not being present to testify, he did not allege any violation of Sixth Amendment rights would result if the interrogation video were played without the officer testifying at trial.

-12-

The United States Supreme Court held that the Sixth Amendment to the United States Constitution prohibits the introduction of *testimonial* statements of persons who do not appear to testify and are therefore not available for cross examination. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). However, there is no Confrontation Clause issue when out-of-court statements are admitted for purposes other than showing the truth of the matter asserted. *Id.* at 59 n.9, 124 S. Ct. at 1369 n.9.

As in *Lanham*, commentary by police within recorded statements during an interrogation are admissible, sometimes even necessary, to provide a context for the answers when a suspect's story shifts and changes. 171 S.W.3d at 27. Reviewing the interrogation of Cariel, his answers and recollections certainly appeared to shift and change as he was confronted with photos of his messages with T.F. and at other points. This is precisely what the Commonwealth argued to the trial court during arguments in the Motion to Exclude. The trial court did not err in declining to exclude the statements. Cariel's rights under the Sixth Amendment were not violated by the playing of the interrogation video.

**Unpreserved Errors**

Cariel alleges the Commonwealth improperly introduced victim impact evidence during the guilt phase of the trial. During his testimony, the Commonwealth asked T.F. how his feelings about what occurred with Cariel had

-13-

changed over the years. T.F. responded that, he was first concerned Cariel was still teaching and around young people like E.H., who was several years younger than T.F., and had concerns others might be victimized but did not feel he personally had been affected. However, as he got older, he testified:

> [n]ow it is impacting me more than I would like to admit
> . . . . There should not be pedophiles for teachers and it's
> if, I have children in the future, I don't know if I will be
> comfortable with having them attend public school
> because if there is one pedophile in the school then there
> could be more.

E.H. also was asked by prosecutors how the experience with Cariel made him feel and he responded he felt stress and anxiety along with the realization there are dangerous people in the world. Cariel did not object to any of these questions.

In *Alderson v. Commonwealth*, we held that "victim impact evidence masquerading as victim background evidence is not permissible as the 'introduction of victim impact evidence during the guilt phase is reversible error.'" 670 S.W.3d 884, 893 (Ky. 2023) (quoting *Tackett v. Commonwealth*, 445 S.W.3d 20, 33 (Ky. 2014)). Certainly, the Commonwealth is entitled to present background evidence to "show the jury that the victim was not a mere statistic, but a living person[.]" *Roe v. Commonwealth*, 493 S.W.3d 814, 823 (Ky. 2016) (quoting *Bennett v. Commonwealth*, 978 S.W.2d 322, 324-26 (Ky. 1998)).

-14-

"Testimony does not become prejudicial victim-impact evidence simply because it elicits an emotional response from the witness." *Id*. at 824.

Still, background evidence can become prejudicial. "The line between relevant-background information and prejudicial-impact testimony is a narrow one; but we essentially distinguish the two forms of testimony by inquiring whether the witness was overly emotional, condemnatory, or accusatory in nature." *Id*. (citing *Foley v. Commonwealth*, 953 S.W.2d 924, 937 (Ky. 1997)). Another "way to determine the difference between victim impact evidence and victim background evidence is whether the evidence is 'aimed primarily at appealing to the jurors' sympathies' or 'providing an understanding of the nature of the crime[.]'" *Alderson*, 670 S.W.3d at 893 (quoting *Tackett*, 445 S.W.3d at 33). In deciding the testimony of the victims were sufficiently prejudicial to require reversal, the Court considered that Alderson denied committing any of the sexual acts for which he was charged. "Because there was a lack of any physical evidence, the perception of the girls as victims who were suffering long-term damage would arouse the jurors' sympathy and could result in a verdict rooted in that sympathy rather than based on the evidence properly admitted." *Id.* at 894.

In the present case, unlike *Alderson*, the objection was not preserved. No objection was made to the questions asked of either victim in this matter. Certain portions of the testimony of the victims, particularly T.F., may have

-15-

approached the line described in *Alderson*. T.F.'s comments characterizing Cariel as a "monster" and referencing "a pattern of behaviors" were improper. The Commonwealth argues the question soliciting these responses, asking T.F. about how his feelings had evolved, was proper to demonstrate what the victim's emotional maturity level had been at the time of the offense. The Commonwealth further argues the line of questioning was appropriate to refute Cariel's defense T.F. had deceived and, essentially, entrapped him.

The questions propounded by the Commonwealth certainly could have been more carefully tailored to achieve these ends and avoid the area of victim-impact testimony. However, whether any of the Commonwealth's specific questions might have crossed that line is not a determination which we need make. Here, Cariel is required to show palpable error amounting to manifest injustice occurred to obtain a reversal on this alleged error. This is not a showing Cariel can make. Quite distinct from *Alderson*, here, there was no dispute as to whether Cariel did what he was alleged to have done. For each of the offenses, Cariel's only defense was he had been fooled because the boys lied about their ages to be on Grindr; that Cariel's behavior satisfied all other elements of the offenses was essentially undisputed. He did not deny sending a photograph of his exposed penis to a person who was 15 at the time. Nor did he deny allowing a 13 year old to perform oral sex on him, or that he masturbated in the presence of that 13 year old.

-16-

As no disagreement about whether the acts happened or who committed them was present, this case presents a scenario distinct from the central concern expressed in *Alderson* – that in the face of a dearth of physical evidence, the jury might have been persuaded to find guilt based upon the emotional impact testimony and not upon actual evidence of guilt.

Because of this, and the utter lack of preservation, we cannot hold the evidence elicited of either victim in the present case were so prejudicial as to raise a question as to whether the outcome of the trial would have been different, had the prosecution not elicited the testimony from the victims about the effects of their experiences on them during the guilt phase of the trial. We cannot say the reason Cariel was found guilty was because of these questions and answers.

Next Cariel claims he was prejudiced by incorrect impeachment procedures employed by the prosecution during his cross-examination. At his initial interrogation, Cariel had told officers E.H. ran off after performing oral sex upon him. In contrast, during his testimony at trial, he described E.H. still waiting around the parking lot while Cariel drove off. When confronted with the difference, Cariel expressed confusion about what he told officers during his interrogation. The prosecution referenced the video having been played during the testimony of Officer Renfro just a day prior but did not play back the video to refresh Cariel's recollection. He alleges the failure to do so was prejudicial and

-17-

violated KRE 613. The Commonwealth correctly argues KRE 613 does not require admissions of a party opponent, which the prosecution consistently characterized the interrogation tape as, be played to refresh the opponent's recollection.

Cariel also complains the prosecution inquired on multiple occasions during cross-examination whether he felt any remorse for what the boys had been put through, knowing his answer would be "no." Cariel explained in response he felt no remorse for boys of such young age being involved in these matters because they lied about their age, averring they were over eighteen (18) when they signed up for Grindr.[6] While he did acknowledge having some empathy for the boys given their young age, Cariel described his assessment of his career ending being the result of the victims' lies about their ages.

The Commonwealth argues – and we are inclined to agree – questions during cross-examination do not constitute evidence, but the answers to those questions do. If Cariel was painted in a less-than-favorable light to the jury, it was

---

[6] Grindr requires that users enter their date of birth before use. "Specifically, Plaintiff asserts that he reasonably relied upon Defendant's age-restriction (a minimum of 18 years of age, 21 years in places where 21 years is the age of majority) found in the Grindr Terms of Service, and that Defendant's negligent failure to enforce its age-restriction directly resulted in Plaintiff's arrest and corresponding financial expenditures." *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 322 (D.N.J. 2015).

by his answers rather than the questions themselves. Further, we find whether one feels remorse does not constitute character evidence. As the Supreme Court held:

> Initially, we question whether KRE 404(b) is even applicable to this testimony. Hubers's seeming lack of remorse does not constitute a crime, wrong, or act under the rule. A lack of remorse is not really an "act," but more akin to a state of mind or demeanor and, at least in this case, the evidence was offered through the testimony of witnesses who observed the defendant's demeanor as she recounted what had occurred.

*Hubers v. Commonwealth*, 617 S.W.3d 750, 778 (Ky. 2020).

Even if we were to consider lack of remorse as a character trait, we cannot say, under the facts at hand, allowing questions concerning Cariel's remorse, or lack thereof, was palpable error. *Epperson v. Commonwealth*, 197 S.W.3d 46 (Ky. 2006). "A lack of remorse provides insight about a defendant's mental state[,]" *Hubers*, 617 S.W.3d at 779, and was relevant here because of Cariel's claimed defense he only participated in the sexual acts and messaging because he was unaware of the victims being underage.

The alleged errors considered together do not require reversal. The trial was not fundamentally unfair, so no cumulative effect of the alleged errors occurred here. *See Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010) (citation omitted) ("We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial. Where, as in this case, however, none of the errors individually raised any real question of

-19-

prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice.").  Thus, we affirm.

## CONCLUSION

Having reviewed the briefs of the parties and the rulings of the trial court, no error occurred during the trial which would require reversal of Cariel's conviction or sentence.  The Grayson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kayley V. Barnes
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky