**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bernard Abney MAY, Defendant-Appellant.**

**No. 20040.**

United States Court of Appeals, Sixth Circuit.

Sept. 2, 1970.

---

716

Francis D. Burke, Pikeville, Ky., for defendant-appellant; Burke and Justice, Pikeville, Ky., on brief.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before WEICK, McCREE and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

The defendant-appellant, Bernard Abney May, was convicted following a jury trial of unlawfully transporting in interstate commerce a falsely made and forged security [check] in violation of 18 U.S.C. § 2314. The one issue raised on appeal is the sufficiency of the evi-

dence to establish whether the defendant knew that the transported check was falsely made and forged.

Defendant cashed the check for $4,225 at a branch of the First National Bank of Pikeville, Kentucky. It was payable to May Car Company and was endorsed by the defendant, May Car Company, Bernard May owner. It was drawn on a branch of the First National Bank of Ironton, Ohio and purported to have been against the account of Orline A. Gillmin. The proceeds of the check were paid to the defendant except for some $400 which was applied to various notes held by the bank on which the defendant was endorser. The check was dishonored when presented through regular banking channels to the Ohio bank. There was no account in the name of Orline A. Gillmin.

The defendant does not deny that the check was falsely made or forged and that it was transported in interstate commerce. He bases his defense on the claimed lack of requisite knowledge that the check was falsely made or forged. The defendant's motions for judgment of acquittal made at the close of the evidence offered by the government and at the close of all the proof were denied.

The evidence relied upon by the government to establish that the defendant knew that the check was falsely made, as is usual when proving intent, is all circumstantial. When the defendant presented the check to the Pikeville Bank where he was a customer, he told the branch manager that he had an invoice for four automobiles which he had purchased for the purported drawer of the check. He stated he had done business with drawer of the check before, knew he was all right and that he, the defendant, would profit by approximately $725 from the transaction after paying for the automobiles.

A former F.B.I. agent testified that the defendant told him that on August 24, 1968, the night before the date of the check, the defendant was in a poker game in Portsmouth, Ohio and won the check in the game. He first stated that

he did not win the check from the purported drawer, whom he said was named Pete Gillison (the last name of the drawer of the check as it appears on the exhibit is Gillmin), but later changed his statement and said he had in fact won the check on a bet from Gillison and that he himself had filled in the name May Car Company as the payee. He refused to identify any other participants in the poker game stating they were hoodlums and he was fearful of divulging their identity. He also stated that Gillison was a car dealer from Cleveland, Ohio, with the C & T Motor Company, that he was well known in the Portsmouth area and could be located without difficulty. When pushed to reveal the names of the poker players who could verify his story, he stated that since no warrant had been issued for his arrest, it would be foolish to divulge such information, but if and when his case reached the prosecution stage he would then bring forth witnesses to this poker game.

When the F.B.I. agent interviewed the defendant on a subsequent occasion, the defendant told him that he had been unable to locate the drawer of the check and had even forgotten his name. He stated during the course of the interview both that he thought the check was good and that he was suspicious of it. He related first that he had deposited the check the next morning after receiving it, which he insisted indicated he thought it was good, and later in the interview said he held it several days and called the manager of the Pikeville Bank and asked him to check upon its validity. The branch manager denied receiving such a call. When again asked concerning the identity of the other participants in the poker game, the defendant said he had four witnesses but again refused to identify any of them.

In passing on the motion for judgment of acquittal at the close of the government's case, the District Judge also had before him testimony of agents of the F.B.I. that their investigations had failed to uncover any person by the name of Orline A. Gillmin or Pete Gillison in the Cleveland or Portsmouth areas. Nor did their investigations locate a C & T Motor Company where the defendant stated the drawer of the check was employed.

The test for determining the sufficiency of the evidence to sustain a motion for judgment of acquittal is well settled and is clearly set forth in United States v. Conti, 339 F.2d 10, 13 (6th Cir. 1964).

"In testing the sufficiency of the evidence to withstand a motion for judgment of acquittal, the trial judge does not pass upon the credibility of the witnesses or the weight of the evidence. On the contrary, he must view the evidence and the inferences that may justifiably be drawn therefrom in the light most favorable to the Government. [The many citations omitted]. If, under such view of the evidence he concludes that a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion should be overruled and the issue left to the jury. It is only where under such view of the evidence he concludes there must be such a doubt in a reasonable mind, should the motion be granted." [The many citations omitted].

We conclude, as did the District Judge, that applying this test to the government's evidence in this case a reasonable mind could find the defendant guilty beyond a reasonable doubt. He admittedly had possession of a falsely made check which he endorsed, cashed, and caused to be transported in interstate commerce. His many contradictory statements and his explanation of the rather bizarre circumstances surrounding his acquisition of the check clearly give rise to a justifiable inference that he knew the check was falsely made. It is particularly difficult to understand how the defendant could accept a check for more than $4,000 in a poker game from a man whom he said was well known, and whom he knew and had done business with, and then not only be con-

fused about the person's real name, but forget it completely while purportedly searching for him to have a bad check made good.

■ The fact that the evidence is largely circumstantial is inconsequential. Circumstantial evidence, if strong enough to convince a jury of a defendant's guilt beyond a reasonable doubt, is sufficient to take a case to the jury and sustain a verdict. United States v. Conti, *supra*; United States v. Burkeen (United States v. Matlock, United States v. Matlock), 350 F.2d 261 (6th Cir. 1965), cert. denied, Matlock v. United States, 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed.2d 369; United States v. Comer, 288 F.2d 174, 175 (6th Cir. 1961), cert. denied, 366 U.S. 925, 81 S.Ct. 1351, 6 L.Ed.2d 384; United States v. Baxter, 289 F.2d 487 (6th Cir. 1961), cert. denied, 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31.

The judgment of conviction is affirmed.