Timothy B. WILEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1997–CA–000666–MR.

Court of Appeals of Kentucky.

July 17, 1998.

Case Ordered Published by Court
of Appeals Sept. 18, 1998.

Gene Lewter, Lexington, for Appellant.

A.B. Chandler III, Attorney General, Vickie L. Wise, Assistant Attorney General, Frankfort, for Appellee.

Before COMBS, DYCHE, and SCHRODER, JJ.

### OPINION

COMBS, Judge.

The appellant, Timothy B. Wiley, appeals from a judgment of the Fayette Circuit Court following his conviction of first-degree rape. Wiley claims that he was denied a fair trial and due process of law according to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because the trial court refused to allow him to use his peremptory challenges to strike women jurors. The exercise of his strikes was solely based on the gender of the jurors. Wiley claims that he was allowed to act in a discriminatory manner because he is a private individual rather than a state actor. As we disagree with the appellant, we affirm the judgment of the Fayette Circuit Court.

Wiley was indicted by the Fayette County Grand Jury on the charges of rape in the first degree and of giving a false name or address to a peace officer. The case proceeded to trial. After voir dire, Wiley attempted to use his peremptory challenges to strike four men and five women from the

jury. When the Court questioned Wiley's use of peremptory strikes to exclude the five women from the jury, the appellant responded that he had stricken some younger women because they were more likely to relate to the victim. The court refused to enforce the appellant's peremptory strikes based on their gender and placed the women's names back into the jury pool. The Commonwealth used five strikes—all against men. *In toto,* nine men were stricken—but no women. As a result, the jury was composed of eight women and four men—or two-thirds women. The jury found the appellant guilty of First-Degree Rape and sentenced him to ten years in prison. The jury also found him guilty of Giving a Peace Officer a False Name or Address and sentenced him to ninety days for this crime—with both sentences to run concurrently. This appeal followed.

■ Appellant alleges that according to *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), only the state is prohibited from using its peremptory challenges based on gender. We shall briefly review the case history of the role of discrimination with respect to peremptory challenges in order to analyze the issue of gender in this context.

■ In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that the Equal Protection Clause prohibits the use of peremptory challenges based on race. In order to show a *prima facie* case of purposeful discrimination, the defendant must first show that he is a member of a cognizable racial group. *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). Secondly, the prosecutor must have used peremptory challenges to remove members of the defendant's race from the venire. Third, facts and other relevant circumstances must coincide to raise an inference that the prosecutor may have used peremptory challenge to exclude veniremen based on race. The trial judge has the discretion to determine if the prosecutor's use of peremptory challenges has created a *prima facie* case of discrimination against black jurors. If the defendant makes a *prima facie* showing, the state must demonstrate a neutral explanation for challenging black jurors. *Batson v. Kentucky, supra,* at 96–97, 106 S.Ct. 1712.

In subsequent cases, the Supreme Court expanded the scope of its holding in *Batson.* In *Powers v. Ohio,* 499 U.S. 400, 401, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." Next, in *Edmonson v. Leesville Concrete Co. Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court applied *Batson* to civil cases as well as to criminal actions.

*Batson* and its progeny dealt with discriminatory use of peremptory challenges by the state alone and left open the question of whether the Constitution prohibited a *criminal defendant* from engaging in purposeful racial discrimination to tailor the racial composition of his jury by the exercise of peremptory challenges. This issue was finally resolved by the Court in *Georgia v. McCollum.* The Supreme Court stated:

> [T]he Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges.... [T]he defendants must articulate a racially neutral explanation for peremptory challenges.

*Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

The Court's decision turned upon whether the discriminatory use of peremptory challenges by a defendant amounted to state action. The Court noted that racial discrimination violated the Constitution *only* when it was attributable to state action and, therefore, that a criminal defendant's discriminatory use of peremptory challenges would be unconstitutional only if it were tantamount to state action.

Reasoning that the right to exercise peremptory challenges is conferred by state statutory or common law, the court held that the use of peremptory strikes does, therefore, involve state action. The Court employed the three principles set out in *Edmonson, supra,* to analyze and determine

whether a criminal defendant (private party) could be characterized as a state actor:

> (1) [T]he extent to which the actor relies on governmental assistance and benefits; ... (2) whether the actor is performing a traditional governmental function; and ... (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority.

*Edmonson, supra,* at 621–622, 111 S.Ct. 2077. Applying these three principles, the Court determined that the criminal defendant in *McCollum* was indeed a state actor.

 Finally, in *J.E.B. v. Alabama, supra,* the Supreme Court held that intentional discrimination on the basis of gender—as well as race—by state actors in the use of peremptory strikes in jury selection violates the Equal Protection Clause. Gender and racial discrimination both will not be tolerated as bases for tailoring the composition of a jury.

Relying on *J.E.B., supra,* appellant argues that only the state is prohibited from using its peremptory challenges based on gender. He cites Justice O'Connor's concurring opinion in *J.E.B., supra,* in which she stated that "the Equal Protection Clause does not limit the exercise of peremptory challenges by private civil litigants and criminal defendants." *Id.* at 151, 114 S.Ct. 1419. Justice O'Conner emphatically articulated her position (re-iterating her dissent in *McCollum, supra* ) that criminal defendants *cannot* be construed to be state actors—indeed, that it is incongruous, illogical, and unrealistic to try to identify one who is prosecuted by the state as being anything but antagonistic to the state. Clearly, criminal defendants are not state actors:

> From arrest, to trial, to possible sentencing and punishment, the antagonistic relationship between government and the accused is clear for all to see.... [T]he unique relationship between criminal defendants and the State precludes attributing defendants' actions to the State....

*McCollum,* supra, 505 U.S., at 67, 112 S.Ct., at 2363. *(O'Connor, J., dissenting).* Limiting the accused's use of the peremptory is "... a serious misordering of our priorities,"... for it means ... "we have exalted the right of citizens to sit on juries over the rights of the criminal defendant, even though it is the defendant, not the jurors, who faces imprisonment or even death." *McCollum, supra,* 505 U.S., at 61–62, 112 S.Ct., at 2360. However persuasive, we nonetheless note that Justice O'Connor's reasoning was contained in a concurring opinion and that the majority opinion of *J.E.B., supra,* prohibited the discriminatory exercise of peremptory challenges based not only upon race but gender as well—adhering to the rule of *McCollum* that a criminal defendant is a state actor. Be it legal fiction, subterfuge, or sound logic, the current law is that a criminal defendant is characterized as a state actor and is thereby precluded from the exercise of peremptory challenges based on race (*McCollum, supra* ) or gender (*J.E.B., supra* ).

In the case before us, when questioned as to his reasons for striking the women from the jury, the appellant candidly told the court that his decision to exclude the women was based on their gender; he did not offer any gender-neutral explanations—an act of blatant discrimination on appellant's part. As he was exercising a state-conferred right (peremptory challenges) derived from the court's assistance, he must be described as a state actor—a status that rendered his use of the challenges unconstitutional. Therefore, the trial court correctly prohibited the appellant's peremptory strikes based on gender.

In summary, the current state or federal Constitutional law characterizes a criminal defendant as a state actor who is, therefore, prohibited by the Equal Protection Clause from discriminating against potential jurors on the basis of race or gender in the exercise of peremptory challenges. The appellant has offered no discrimination-neutral explanation for attempting to strike the five women during peremptory challenges.

Therefore, we affirm the judgment of the Fayette Circuit Court.

All concur.