Avery GRAVES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Francis Gerald Thomas, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Roy Lee Woods, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 96–SC–0342–MR, 96–SC–0345–
MR and 96–SC–0346–MR.

Supreme Court of Kentucky.

Jan. 20, 2000.

Rehearing Denied June 15, 2000.

Larry H. Marshall, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant Avery Graves.

David A. Lambertus, Louisville, for appellant Francis Gerald Thomas.

Thomas M. Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant Roy Lee Woods.

A.B. Chandler, III, Attorney General, Frankfort, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee Commonwealth of Kentucky.

STEVENSON, Justice.

Appellant Francis Gerald Thomas desired to purchase one kilogram of cocaine for $27,000.00 and asked Kenneth Furman to assist him in arranging the purchase. Furman contacted Aaron McDuffie, who in turn contacted Appellant Roy Lee Woods, who agreed to obtain the cocaine, sell it to Thomas, and share some of the profits with Furman and McDuffie. Arrangements were made to consummate the transaction on February 8, 1995 at Trixie's Lounge on Preston Highway in Louisville. Woods and McDuffie, along with Appellant Avery Graves, arrived at Trixie's in a vehicle driven by Woods. Thomas and Furman arrived at Trixie's in a vehicle driven by Thomas. McDuffie testified that he, Woods and Graves encountered Thomas and Furman at a pay phone inside Trixie's, and that he, Woods and Graves all directed Thomas and Furman to follow them to the parking lot. Woods and Thomas went to Thomas's vehicle; McDuffie, Graves and Furman went to Woods's vehicle. Graves got into the driver's seat and McDuffie got into the front passenger seat of Wood's vehicle. Meanwhile, Thomas delivered $27,000.00 to Woods, who returned to his vehicle and placed the money in its trunk. He and McDuffie then gave Furman $500.00 as part payment of Furman's share. When Furman inquired, "[w]here's the dope," Woods replied that he had given it to Thomas. Graves, with McDuffie still in the front passenger seat and Woods in the back seat, then drove the Woods vehicle out of the parking lot and north on Preston. When Furman returned to

Thomas's vehicle, Thomas inquired, "[w]here's the dope," and Furman replied, "I thought you had it." Thomas, with Furman in the front passenger seat, then drove his vehicle out of the parking lot and north on Preston in hot pursuit of Woods's vehicle.

The two vehicles sped north on Preston Street, then on Shelby Street. There was evidence that the vehicles were traveling between 70 and 100 miles per hour in a 35 miles per hour zone and that gunfire was exchanged between Woods and Thomas. Ultimately, Graves drove the Woods vehicle through a red light at the intersection of Shelby and Eastern Parkway and broadsided a vehicle owned and being operated by Clara McDonald. McDonald and her son, Robert McDonald, were killed and McDonald's vehicle was substantially damaged by the collision. Thomas drove his vehicle through the same red light and collided with yet another vehicle owned and being operated by Kenneth Weathers, causing substantial damage to Weathers's vehicle. Both accidents were witnessed by a police officer who arrived on the scene within moments. Graves was pinned behind the steering wheel of Woods's vehicle and was arrested at the scene. Thomas, Woods, Furman and McDuffie all fled the scene. Woods was discovered hiding in a nearby White Castle Restaurant. McDuffie, Thomas and Furman escaped, but were arrested later. The $27,000.00 was recovered from the trunk of Woods's car, but no cocaine was found.

Graves, Thomas and Woods appeal their subsequent convictions in the Jefferson Circuit Court of trafficking in a controlled substance in the first degree, wanton murder (two counts), and criminal mischief in the first degree. The operators of the two vehicles, Graves and Thomas, were also convicted of wanton endangerment in the first degree, speeding, and disregarding a traffic control device. Thomas was additionally convicted of failure to stop and render aid (leaving the scene of an accident). All three appellants were sen-

tenced to life in prison for each of the wanton murder convictions and to lesser penalties for the other offenses, each sentence to run concurrently with the others.

## TRAFFICKING IN A CONTROLLED SUBSTANCE

■ Appellants assert that they were entitled to directed verdicts of acquittal on their respective charges of first-degree trafficking in a controlled substance, because no cocaine was ever found, thus there was a failure of proof that any controlled substance either was sold or transferred, or was possessed for the purpose of sale or transfer. They rely on those cases which hold that an instruction should not be given on a theory which is unsupported by the evidence. *E.g., Butler v. Commonwealth,* Ky., 560 S.W.2d 814 (1978); *Pilon v. Commonwealth,* Ky., 544 S.W.2d 228 (1976); *Blaine v. Commonwealth,* Ky., 459 S.W.2d 759 (1970).

■ It is unnecessary for a conviction of trafficking in a controlled substance that the controlled substance be seized by the police or that it be introduced at trial. Conviction can be premised on circumstantial evidence of such nature that, based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt. *Howard v. Commonwealth,* Ky.App., 787 S.W.2d 264 (1989). In this case, the jury was instructed that they could find each defendant guilty as either principal or accomplice under alternative theories of criminal liability, *i.e.,* trafficking by sale or transfer, or trafficking by possession with intent to sell or transfer. KRS 218A.1412(1); KRS 218A.010(28). McDuffie testified that Woods told him prior to arriving at Trixie's Lounge that he had the cocaine and that he intended to sell it to Thomas. That testimony alone supports Woods's conviction of trafficking by possession with the intent to sell. *Howard v. Commonwealth, supra.* There was ample evidence that Thomas gave Woods $27,000.00 for the purpose of promoting a sale of cocaine

to him by Woods. That was sufficient evidence to convict Thomas of complicity to first-degree trafficking. KRS 502.020(1). Likewise, Graves was present in the vehicle when Woods told McDuffie that he had the cocaine which he intended to sell to Thomas; Graves participated in directing Thomas and Furman to the parking lot where the transaction would take place; and Graves then positioned himself behind the wheel of Woods's car, a fact from which a jury could infer an intent to aid and abet the commission of the offense by acting as the getaway driver in the event of the need for a hasty departure. That was sufficient circumstantial evidence to convict Graves of complicity to first-degree trafficking. *See Skinner v. Commonwealth,* Ky., 864 S.W.2d 290 (1993). As for the failure of the police to find any cocaine at the scene, the jury could have believed that Woods, McDuffie, Thomas or Furman, all of whom temporarily escaped, did so with the cocaine in his possession.

## WANTON MURDER

■ The jury was instructed that each appellant could be convicted of the wanton murders of the McDonalds if the jury believed beyond a reasonable doubt that he was a participant in the commission of the offense of first-degree trafficking in a controlled substance, and that his participation in that offense constituted wanton conduct which created a grave risk of death to another under circumstances manifesting extreme indifference to human life, and which resulted in the deaths of the McDonalds. The jury convicted all three appellants of two counts of wanton murder under that instruction.

*Bennett v. Commonwealth,* Ky., 978 S.W.2d 322, 326–28 (1998) discusses at length the theory under which participation in the commission or attempted commission of a dangerous felony can supply the element of aggravated wantonness necessary to convict of wanton murder. Under the previous common law offense of "felony murder," the intent to engage in

the underlying felony was transferred to the homicide so as to provide the element of malice necessary to convict of intentional murder. (There was no common law offense of wanton murder.) The element of "dangerous[ness]" with respect to the underlying felony could be derived either from the nature of the felony *or the method of its perpetration or attempted perpetration. Id.* at 326–27 (citing R. Perkins, *Criminal Law* 36 (1st ed. Foundation Press 1957) (emphasis added).

The Kentucky Penal Code eliminated the common law offense of felony murder, but incorporated a similar concept into the offense of wanton murder. Since intent is not an element of wanton murder, the commission of the underlying offense does not supply the mens rea necessary to convict of intentional murder. Instead, the facts concerning the underlying felony and the defendant's participation therein may satisfy the element of aggravated wantonness necessary to convict of wanton murder. *Id.* at 327; *see also Kruse v. Commonwealth*, Ky., 704 S.W.2d 192 (1985). A reasonable jury could (and obviously did) conclude from the facts of this case that the cocaine transaction was still ongoing when Woods's vehicle driven by Graves collided with the McDonald vehicle. One of the primary theories advanced by the appellants in defense to the charges of first-degree trafficking was that the drug transaction was never completed. A clear inference from the evidence presented in this case is that Thomas's purpose in chasing after and shooting at the occupants of the Woods vehicle was to complete that transaction by obtaining the cocaine for which he had paid Woods $27,000.00; and that Graves's and Woods's actions in fleeing from and shooting at the occupants of the Thomas vehicle were inextricably intertwined with Thomas's efforts to complete the transaction. Thus viewed, the high speed chase and the exchange of gunfire were but circumstances involved in the method of "perpetration or attempted perpetration" of the ongoing drug transaction, *Bennett, supra*, at 326; and that con-

duct provided the element of aggravated wantonness necessary to convict all three appellants of the wanton murders of the McDonalds.

## DOUBLE JEOPARDY

■ Convictions of all three appellants of multiple offenses arising out of the described events did not violate the constitutional proscription against double jeopardy. Each offense of which each appellant was convicted required proof of an element which the other offenses did not. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1996), *cert. denied sub nom., Effinger v. Kentucky*, 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997).

■ Nor was it double jeopardy to convict the appellants of the wanton murders of the McDonalds and also of the underlying offense of first-degree trafficking even though some of the facts surrounding the underlying offense provided the element of aggravated wantonness necessary to convict of the murders. *Bennett v. Commonwealth, supra*, at 327.

■ Finally, it was not double jeopardy for the jury to find the appellants guilty under the wanton murder instruction described above after having signed verdict forms finding them not guilty under an alternative theory of wanton murder. If the convictions of wanton murder which were premised on the theory of appellants' participation in the trafficking offense were being reversed, appellants could argue upon remand that they could not be retried on the other wanton murder theory for which they were acquitted. *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518, 526 (1994), *overruled on other grounds, Elliott v. Commonwealth*, Ky., 976 S.W.2d 416 (1998). However, the wanton murder convictions premised on appellants' participation in the trafficking offense are being

affirmed. The fact that the jury was instructed on alternative theories of wanton murder does not per se implicate the proscription against double jeopardy.

## INSTRUCTIONS

■ Appellants raise a number of errors pertaining to the form and contents of the instructions. None of these alleged errors were preserved. Thus, they are subject to review only as possible palpable errors. RCr 10.26. Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed· non-prejudicial. *Jackson v. Commonwealth,* Ky.App., 717 S.W.2d 511 (1986).

■ Appellants point out that the instruction on first-degree trafficking failed to include the element that the accused knew that the substance was cocaine, and that such knowledge is an element of this offense. KRS 218A.1412(1); KRS 501.030(2). However, the evidence was undisputed that Thomas offered to pay $27,000.00 for a kilogram of cocaine; that Woods agreed to sell Thomas a kilogram of cocaine for $27,000.00; and that Graves was present when Woods told McDuffie that he had the cocaine which he intended to sell to Thomas. If the jury believed that Thomas, Woods and Graves were guilty of trafficking in cocaine, they could not have believed that any of the three did not know that the substance was, in fact, cocaine. No palpable error occurred with respect to this omission.

■ Appellants' next claim is that the wanton murder instructions under which they were convicted did not require proof of venue, *i.e.,* that the offenses occurred in Jefferson County, and that the instructions must require that venue be proved beyond a reasonable doubt. *Willis v. Commonwealth,* Ky., 339 S.W.2d 174 (1960). However, it was held in *Horn v.*

*Commonwealth,* 289 Ky. 600, 159 S.W.2d 417 (1942) that omission of that element from an instruction is not prejudicial if there was an abundance of uncontradicted evidence that the offense occurred in the county in which the trial was held. Here, the Commonwealth introduced uncontradicted evidence that the trafficking offense occurred in Jefferson County and that the vehicles were headed north on Preston and Shelby Streets from that point until the accident occurred. One cannot drive in that direction and leave Jefferson County without crossing the Ohio River. It was also uncontradicted that the fatal collision occurred at the intersection of Shelby Street and Eastern Parkway which is well south of the Ohio River. The instructions under which the appellants were convicted of first-degree trafficking required the jury to believe beyond a reasonable doubt that the offense occurred in Jefferson County. We do not believe that a substantial possibility exists that the jury would have acquitted the appellants of the wanton murder charges had this oversight not occurred.

■ Appellants argue that the wanton murder instructions were erroneous in that they did not require the jury to find that they *acted with a degree of wantonness* manifesting extreme indifference to human life. Instead, the instructions required the jury to find that the appellants were wantonly engaging in conduct which created a grave risk of death to another and that the victims' deaths were caused *under circumstances* manifesting extreme indifference to human life. KRS 507.020(1)(b) predicates guilt upon a finding that "*under circumstances* manifesting extreme indifference to human life, [the defendant] wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." (Emphasis added.) The instruction given by the trial judge comports with the language of the statute and is virtually identical to the instruction recommended at 1 Cooper,

*Kentucky Instructions to Juries (Criminal)* § 3.23 (4th ed. Anderson 1993).

## ALLEGED "BATSON" VIOLATIONS

 Appellants Woods and Graves (both African–Americans) claim so-called *"Batson"* violations by the prosecutor and by Appellant Thomas (who is Caucasian) in the exercise of their peremptory strikes. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There were nine African–Americans among the fifty prospective jurors called for this case. The prosecutor was allotted eleven peremptory strikes and used two of those peremptories to excuse two of the nine African–Americans. The trial judge did not require the prosecutor to explain his peremptory strikes, finding that the appellants had failed to establish a prima facie case that the prosecutor's strikes were racially motivated. Absent any other indicia of racial motivation, the mere fact that the prosecutor used two peremptory strikes to excuse two of nine African–Americans from the panel does not constitute a prima facie showing that the strikes were racially motivated. *Commonwealth v. Snodgrass,* Ky., 831 S.W.2d 176, 179 (1992). The trial judge did require counsel for Thomas to articulate racially neutral reasons for using four of his allotted sixteen peremptories to excuse four African–Americans from the panel. *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Wiley v. Commonwealth,* Ky.App., 978 S.W.2d 333 (1998). Counsel explained that he struck one juror because she worked in the court-monitoring system; a second because he was acquainted with a police lieutenant and his brother was convicted of murder; a third because she had family members in the court system and made statements during voir dire which indicated she would not accept Thomas's theory of the case; and the fourth because she had been represented by an attorney in one of the opposing counsels' office. The trial judge found these to be race-neutral reasons for the strikes and we conclude that her finding was not clearly erroneous.

*Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990).

## OTHER CLAIMS OF ERROR

 Woods claims he should have been granted a mistrial when McDuffie testified that Woods was a convicted felon. Actually, McDuffie testified that the reason why he first failed to tell a police interrogator that Woods was the one who had fired the shots from the Woods vehicle was because "I knew he wasn't supposed to have a gun." We do not view this statement as evidence that Woods was a convicted felon. Even if we did, there was no necessity for a mistrial. This type of evidentiary error is easily cured by an admonition to the jury to disregard the testimony. *Huddleston v. Commonwealth,* 251 Ky. 172, 64 S.W.2d 450 (1933); *Clay v. Commonwealth,* Ky.App., 867 S.W.2d 200 (1993). Woods did not request an admonition.

 Graves claims he should have been granted a mistrial when McDuffie testified that "somebody" told him he should "take the Fifth" and refuse to testify and that he thereafter went to the office of Graves's attorney, who refused to talk to him. Furman then testified that McDuffie suggested that Furman "take the Fifth," but that he (Furman) explained that he had already waived his Fifth Amendment rights. Although McDuffie did not identify who had urged him to refuse to testify, the clear implication was that it was someone connected with Graves. We have held this kind of evidence admissible as inconsistent with a defendant's innocence.

> Any attempt to suppress a witness' testimony by the accused, whether by persuasion, bribery, or threat, or to induce a witness not to appear at the trial or to swear falsely, or to interfere with the processes of the court is evidence tending to show guilt.

*Foley v. Commonwealth,* Ky., 942 S.W.2d 876, 887 (1996), *cert. denied,* 522 U.S. 893, 118 S.Ct. 234, 139 L.Ed.2d 165 (1997); *see*

*also Tamme v. Commonwealth,* Ky., 973 S.W.2d 13, 29–32 (1998), *cert. denied,* 525 U.S. 1158, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999).

Graves claims he was entitled to a directed verdict of acquittal of the charge of first-degree criminal mischief, because the Commonwealth failed to prove that the McDonald vehicle was worth at least $1,000.00. KRS 512.020. However, Graves's motion for a directed verdict was only on "all charges" and not specifically on the criminal mischief charge. Nor did he object to the instruction on criminal mischief. When there are multiple counts, the proper procedure for challenging the sufficiency of evidence on one particular count is to object to the giving of an instruction on that count. *Seay v. Commonwealth,* Ky., 609 S.W.2d 128 (1980); *Kimbrough v. Commonwealth,* Ky., 550 S.W.2d 525 (1977). Graves also claims the evidence was insufficient to support his conviction of first-degree wanton endangerment of Kenneth Weathers. We believe his participation in the high speed chase sufficiently involved him in the endangerment of Weathers to support his conviction in that regard.

Woods claims it was error to permit the husband and father of the two victims to "glorify the victims" with his testimony. Woods did not object to this testimony at trial and we find the evidence did no more than humanize the victims, which is permissible evidence. *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519, 523 (1984), *cert. denied,* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).

Thomas's claim that his trial should have been severed from that of his co-defendants is devoid of merit. *Ware v. Commonwealth,* Ky., 537 S.W.2d 174 (1976).

For the reasons set forth in this opinion, the convictions and sentences imposed by the Jefferson Circuit Court in these consolidated cases are affirmed.

LAMBERT, C.J., and GRAVES and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents in a separate opinion in which JOHNSTONE and STUMBO, JJ., join.

COOPER, J., not sitting.

KELLER, Justice, dissenting.

I dissent from the majority opinion for three reasons: First, the trial court should have directed a verdict in favor of appellant Thomas as to his charge of complicity to trafficking in cocaine. Second, the trial court's improper commingling of the crimes of trafficking in cocaine and wanton murder in the jury instruction under which all three appellants were convicted of wanton murder requires reversal of those convictions. Third, appellant Graves's conviction for complicity to trafficking in cocaine should be reversed and remanded for a new trial because the trial court wrongfully allowed the Commonwealth to introduce evidence which implied that someone connected with Graves contacted a prosecution witness and told the witness not to testify. Because the Commonwealth introduced no evidence that Graves or someone acting on his behalf attempted to suppress the witness's testimony, this evidence was prejudicial and could well have influenced Graves's trafficking conviction.

## APPELLANT THOMAS'S CONVICTION FOR TRAFFICKING IN COCAINE

As to Thomas, I find no evidence to support an instruction on trafficking in cocaine, and the trial court should have directed a verdict against the Commonwealth as to this charge. Certainly, all of the evidence suggests that Thomas had every intention of purchasing a huge amount of cocaine. However, the Commonwealth concedes that Thomas never received any quantity of cocaine, and the tragic events of this evening followed from the undisputed fact that Thomas surrendered $27,000 to Woods but did not receive his drugs in return. KRS 218A.1412 crim-

inalizes as first degree trafficking in a controlled substance "knowingly and unlawfully trafficking in" a number of controlled substances including cocaine and KRS 218A.010(28) defines "traffic":

> "Traffic," ... means to manufacture, distribute, dispense, sell, transfer or possess with intent to manufacture, distribute, dispense, or sell a controlled substance.

While the majority appears comfortable affirming Thomas' conviction on the basis of the complicity statute contained at KRS 502.020(1), such a conclusion is explicitly barred by KRS 502.040(1), which explains that:

> A person is not guilty under KRS 502.010 or 502.020 for an offense committed by another person when:
>
> (1) The offense is so defined that his conduct is inevitably incident to its commission.

The 1974 Commentary to this statutory provision explains that subsection one is intended to apply to transactional offenses:

> Subsection (1) provides for two exemptions to the general doctrine of imputed liability for conduct which aids in the perpetration of crime.... The second is for a person who joins another in a two-party transaction that constitutes a crime.... As a consequence of this exemption, the purchaser of an alcoholic drink cannot be convicted as an accomplice under a statute which provides a penalty only for the seller.

In other words, KRS 502.040 reasonably limits the reach of the complicity statute and prevents a drug purchaser from being charged with trafficking. A number of jurisdictions have interpreted this Model Penal Code provision to bar prosecution of drug buyers and sellers for complicity in the crime committed by the other party to the transaction. *See, e.g., People v. Manini,* 79 N.Y.2d 561, 584 N.Y.S.2d 282, 594 N.E.2d 563 (1992) (a seller of a controlled substance is not an accomplice in the possession crime of his buyer); *Robinson v. Texas,* 815 S.W.2d 361 (Tex.App.1991) (a

buyer of drugs is not an accomplice in the "delivery" crime committed by his seller); *Louisiana v. Celestine,* 671 So.2d 896 (La. 1996) (buyer of drugs is not an accomplice in the "distribution" crime committed by his seller); *Owes v. Alabama,* 638 So.2d 1383 (Ala.Crim.App.1993) (buyer of cocaine is not an accomplice in the "sale" crime committed by his seller); *Long v. Arkansas,* 260 Ark. 417, 542 S.W.2d 742 (1976) (buyer of narcotics cannot be an accomplice in the illegal sale of drugs by his seller); *Colorado v. Hart,* 787 P.2d 186 (Colo.App.1989) ("the conduct of one who takes delivery of the controlled substance is "inevitably incident" to the criminal conduct of one who delivers the controlled substance"); *Commonwealth v. Fisher,* 426 Pa.Super. 391, 627 A.2d 732 (1993) (buyer of drugs cannot be an accomplice in the "delivery" crime committed by his seller).

Thomas cannot therefore, as a matter of statutory law, be liable as an accomplice for the crime of trafficking in cocaine because all of the evidence presented indicates that he was the intended "buyer" in this transaction. In addition, the evidence presented by the Commonwealth would not permit the trial court to instruct the jury that they could find Thomas guilty as a principal of the offense since the record contains no evidence that Thomas sold or transferred cocaine and the Commonwealth concedes that he never possessed this alleged cocaine. KRS 218A.1412; *See, e.g. Butler v. Commonwealth,* Ky., 560 S.W.2d 814 (1978); *Pilon v. Commonwealth,* Ky., 544 S.W.2d 228 (1976).

The Commonwealth presented a purely circumstantial case for trafficking in cocaine by Woods (the alleged dealer) and Graves (the alleged dealer's driver), but the testimony relating to preparations for the transaction and the admission by Woods to McDuffie that he had the cocaine were sufficient evidence to allow the trial court to instruct the jury on the crime of trafficking in cocaine as to Woods and

Graves. While the evidence that Woods possessed a quantity of cocaine for sale was far from overwhelming, I feel that "under the evidence as a whole, it [was not] clearly unreasonable for a jury to find the defendant guilty." *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977). The jury could have determined rationally, consistently with the evidence, and beyond a reasonable doubt that Woods had been in possession of cocaine for sale, and the trial court was correct to deny the motions for directed verdicts made by counsel for Woods and Graves. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## THE WANTON MURDER CONVICTIONS

Each of the three appellants was convicted of two counts of wanton murder under an instruction which read:

*NO. [ ]—WANTON MURDER*

If you do not find the defendant, [ ], guilty under Instruction No. 1, and if you find the defendant, [ ], guilty of Trafficking in a Controlled Substance in the First Degree under Instruction No. 2, then you will find him guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

 a. That during the course of Trafficking in a Controlled Substance in the First Degree and as a consequence thereof, [ ] McDonald was killed;

 AND

 b. That by so participating in the offense of Trafficking in a Controlled

Substance in the First Degree the defendant was wantonly engaging in conduct which created a grave risk of death to another and that [ ] McDonald's death was caused under circumstances manifesting extreme indifference to human life.

If you find the defendant guilty under this instruction, you shall say so by your verdict and no more.

As explained above, the Commonwealth introduced insufficient evidence of defendant Thomas's complicity in the crime of trafficking in cocaine to justify the trial court's instruction of the jury as to the offense. Because the trial court should have directed a verdict against the Commonwealth as to Thomas's charge of Trafficking in a Controlled Substance in the First Degree, his wanton murder convictions must be reversed as well because the jury instructions intertwined the crimes and required criminal liability for trafficking in cocaine as a prerequisite to convictions for wanton murder.

Further, the form of the wanton murder instructions under which the jury found all three appellants guilty require this Court to reverse those convictions regardless of the evidence of trafficking in cocaine. While the Commonwealth may have introduced sufficient evidence to support wanton murder instructions based on one or more of the the appellants' roles in the car chase,[1] the Commonwealth encouraged the jury to find the defendants guilty under the other wanton murder instruction premised on trafficking in cocaine, and the jury did so. Consequently, this Court's review does not focus on whether the Com-

---

1. In fact, the first instruction given by the trial court with respect to appellant Graves correctly directed the jury to assess his homicide liability on the basis of the car chase:

 You will find the defendant, Avery Graves, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

 a. That in Jefferson County, Kentucky, on or about the 8th day of February, 1995, he, killed [ ] Mcdonald by striking [him or her] with a car.

 AND

 b. That in so doing, he was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of [ ] McDonald under circumstances manifesting an extreme indifference to human life.

 If you find the defendant guilty under this instruction, you shall say so by your verdict and no more.

monwealth introduced sufficient evidence to justify any instruction on wanton murder, but instead, we must determine whether the evidence introduced at trial justified the specific instruction given. *Fugate v. Commonwealth*, Ky., 445 S.W.2d 675, 677 (1969).

The trial judge should never have given the second wanton murder instruction which integrated the trafficking offense because only the most tortured analysis can imagine a causal relationship between the appellants' alleged participation in the drug transaction and the deaths. The McDonalds were killed almost five miles away from the site where the alleged drug transaction was supposed to have occurred. No transaction was "ongoing" at that time, and the majority's attempt to describe the two offenses as "inextricably intertwined" is imaginative, but devoid of a meaningful factual or authoritative support. The drug transaction had ended. The car chase which followed Thomas's discovery that the cocaine had not been delivered to him cannot be melded into the prior attempt at a drug transaction by the sheer will of the Commonwealth or this majority opinion. Labeling one's own result-oriented conclusions as "clear inference[s] from the evidence presented in this case" does not make them so, and the majority's theory that the high speed chase and whizzing bullets were merely an attempt at completing the drug transaction exceeds even the most liberal interpretation of reasonable inferences. KRS 218A.1412 defines the boundaries of the crime of first degree trafficking in a controlled substance, and it leaves no room for the majority's expanded interpretation.

The Kentucky Penal Code provision which explains causal relationships, KRS 501.060(3), notes, "When wantonly ... causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware...." "[T]he plain intent of the statute is to have the causation issue framed in all situations in terms of whether or not the result as it occurred was either foreseen or foreseeable by the defendant as a reasonable possibility." R. Lawson and W. Fortune, *Kentucky Criminal Law*, Sect. 2–4(d)(3), at 74 (LEXIS 1998).

The bottom line is that the trial court should have instructed the jury as to this "felony wanton murder" theory only if the evidence presented tended to prove beyond a reasonable doubt (1) that drug trafficking created a substantial and unjustifiable risk that fatal auto accidents would occur, and (2) that the appellants appreciated this risk and consciously disregarded. No such evidence was introduced. The Commonwealth did introduce testimony from Furman, one of the unindicted accomplices, that dealing in drugs "could be very dangerous" and that "people can get killed over drug deals," but produced no evidence of the types of risks upon which the trial court instructed the jury. The fatal automobile accident involving two innocent parties five miles from the scene of the attempted drug transaction is beyond the scope of risks proven by the Commonwealth to be incident to drug trafficking. Without such proof, the instruction was improper and all of the wanton murder convictions must be reversed.

### GRAVES'S COUNSEL, McDUFFIE/FURMAN & THE FIFTH AMENDMENT

At trial, the Commonwealth introduced evidence that McDuffie and Furman, with whom the Commonwealth had cut a deal in exchange for testimony, considered invoking their rights to remain silent under the Fifth Amendment to the United States Constitution. Specifically, the Commonwealth introduced evidence: (1) that an unknown person approached McDuffie and suggested that he "plead the Fifth," after which McDuffie went to see Graves's attorney, Mr. Stewart; and (2) that McDuffie tried to persuade Furman to "take the Fifth Amendment." In addition, the Commonwealth asked Furman whether "when

Aaron [McDuffie] was talking to you about pleading the Fifth, did he suggest that you go talk to Mr. Graves' attorney like he wanted to go talk to?" Furman answered in the negative. Finally, in closing argument, the prosecution underscored this testimony by reminding the jury that "people have come and talked to [McDuffie] about taking the Fifth ... there's been a lot of pressure on him by others not to testify."

The majority addresses Graves's claim of error by stating, "Although McDuffie did not identify who had urged him to refuse to testify, the clear implication was that it was someone connected with Graves. We have held this kind of evidence admissible as inconsistent with a defendant's innocence." However, the Commonwealth introduced absolutely no evidence to connect appellant Graves or his counsel with any attempt to get McDuffie or Furman to refuse to testify. The Commonwealth conceded that Mr. Stewart did not speak with McDuffie or Furman, and the attempt to connect this evidence to Graves cannot be supported even by a reasonable inference based on the evidence at trial. "It is a rule ... in this jurisdiction that evidence that a witness has been threatened or otherwise influenced in an attempt to suppress his testimony is admissible in a criminal prosecution only where the threat was made by, or on behalf of the accused." *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528, 531 (1978). Where there is no evidence to connect the defendant with the attempt to suppress testimony, the testimony is clearly inadmissible. *Id.*

Without question, evidence and commentary of this type is highly prejudicial and inflammatory. The majority opinion recognizes this in labeling this type of evidence "inconsistent with a defendant's innocence." Particularly in a case such as this one, where the case for trafficking in cocaine is premised on accomplice liability and circumstantial evidence, I cannot conclude that this inadmissible evidence was

harmless as to the first degree trafficking in a controlled substance conviction. The evidence of guilt on the charges of wanton endangerment, criminal mischief, speeding and disregarding a traffic control device is overwhelming, and, with respect to those convictions, I believe the inadmissible evidence and commentary regarding McDuffie's and Furman's thoughts about invoking the Fifth Amendment was harmless error as contemplated in RCr 9.24. I would, however, reverse Graves's conviction for first degree trafficking in a controlled substance.

I would reverse appellant Thomas's conviction for trafficking in a controlled substance first degree and both of his wanton murder convictions, appellant Woods's convictions for wanton murder, and both appellant Graves's conviction for trafficking in a controlled substance first degree and his wanton murder convictions. I would remand all three appellants' cases for further proceedings consistent with this opinion.

JOHNSTONE and STUMBO, JJ., join this dissent.