NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0276n.06
Filed: May 19, 2008

No. 06-5629

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROY LEE WOODS, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| LARRY CHANDLER, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

_____


BEFORE: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

During a drug transaction gone bad, petitioner Roy Lee Woods attempted to swindle his customer out of $27,000, leading to a high-speed car chase and gun battle. The chase ended when the vehicle in which petitioner was riding collided with another car, resulting in the deaths of two innocent people. A Kentucky state court jury found Woods guilty of four charges, including wanton murder in the course of trafficking in a controlled substance in violation of KY. REV. STAT. ANN. § 507.020. The Kentucky Supreme Court affirmed petitioner's convictions and later denied discretionary review of his motion to vacate the judgment. Thereafter, the United States District Court for the Western District of Kentucky denied Woods's petition for a writ of habeas corpus. He now appeals, and we affirm.

I.

Woods was convicted, along with Avery Graves and Francis Thomas, of trafficking in a controlled substance in the first degree, two counts of wanton murder, and criminal mischief in the first degree. They were each sentenced to life in prison for the wanton murder charges, in addition to lesser sentences for the other convictions. On direct appeal, the Kentucky Supreme Court summarized the facts as follows:

> Appellant Francis Gerald Thomas desired to purchase one kilogram of cocaine for $27,000.00 and asked Kenneth Furman to assist him in arranging the purchase. Furman contacted Aaron McDuffie, who in turn contacted Appellant Roy Lee Woods, who agreed to obtain the cocaine, sell it to Thomas, and share some of the profits with Furman and McDuffie. Arrangements were made to consummate the transaction on February 8, 1995 at Trixie's Lounge on Preston Highway in Louisville. Woods and McDuffie, along with Appellant Avery Graves, arrived at Trixie's in a vehicle driven by Woods. Thomas and Furman arrived at Trixie's in a vehicle driven by Thomas. McDuffie testified that he, Woods and Graves encountered Thomas and Furman at a pay phone inside Trixie's, and that he, Woods and Graves all directed Thomas and Furman to follow them to the parking lot. Woods and Thomas went to Thomas's vehicle; McDuffie, Graves and Furman went to Woods's vehicle. Graves got into the driver's seat and McDuffie got into the front passenger seat of Wood's vehicle. Meanwhile, Thomas delivered $27,000.00 to Woods, who returned to his vehicle and placed the money in its trunk. He and McDuffie then gave Furman $500.00 as part payment of Furman's share. When Furman inquired, "[w]here's the dope," Woods replied that he had given it to Thomas. Graves, with McDuffie still in the front passenger seat and Woods in the back seat, then drove the Woods vehicle out of the parking lot and north on Preston. When Furman returned to Thomas's vehicle, Thomas inquired, "[w]here's the dope," and Furman replied, "I thought you had it." Thomas, with Furman in the front passenger seat, then drove his vehicle out of the parking lot and north on Preston in hot pursuit of Woods's vehicle.
>
> The two vehicles sped north on Preston Street, then on Shelby Street. There was evidence that the vehicles were traveling between 70 and 100 miles per hour in a 35 miles per hour zone and that gunfire was exchanged between Woods and Thomas. Ultimately, Graves drove the Woods vehicle through a red light at the intersection of Shelby and Eastern Parkway and broadsided a vehicle owned and being operated

by Clara McDonald. McDonald and her son, Robert McDonald, were killed and McDonald's vehicle was substantially damaged by the collision. Thomas drove his vehicle through the same red light and collided with yet another vehicle owned and being operated by Kenneth Weathers, causing substantial damage to Weathers's vehicle. Both accidents were witnessed by a police officer who arrived on the scene within moments. Graves was pinned behind the steering wheel of Woods's vehicle and was arrested at the scene. Thomas, Woods, Furman and McDuffie all fled the scene. Woods was discovered hiding in a nearby White Castle Restaurant. McDuffie, Thomas and Furman escaped, but were arrested later. The $27,000.00 was recovered from the trunk of Woods's car, but no cocaine was found.

*Graves v. Commonwealth of Kentucky*, 17 S.W.3d 858, 861 (Ky. 2000).

After Woods exhausted his state post-conviction remedies, he filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 2254. The district court denied the petition but granted a certificate of appealability regarding the issue of whether the evidence presented at trial was sufficient to convict Woods of wanton murder under Kentucky law. Woods timely appealed, and we review his petition de novo. *Harrison v. Motley*, 478 F.3d 750, 754 (6th Cir. 2007).

II.

On appeal, Woods argues that he is entitled to a writ of habeas corpus because the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Untied States." 28 U.S.C. § 2254(d)(1). Specifically, Woods argues that the state court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), in finding that his conviction was supported by sufficient evidence. *Jackson* stands for the now-unremarkable proposition that a petitioner is entitled to habeas relief if no rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Id*. at 318-

19.  *See also United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993) (quoting *Jackson*, 443 U.S. at 319).

Woods was charged with wanton murder in the course of a theft by deception and wanton murder in the course of drug trafficking.  Petitioner admits that there was sufficient evidence to convict him of the charge of wanton murder in the course of a theft by deception.  However, he was acquitted of this count and now argues that it was improper for the state court to use this evidence to convict him of wanton murder in the course of drug trafficking.  In this appeal, Woods argues that no reasonable juror could have concluded that the evidence was sufficient to prove:  (1) that his activity satisfied the element of "wantonness" under Kentucky law; (2) that the fatal crash was part of the drug transaction; and (3) that his actions caused the death of the victims.

Petitioner argues that in order to be "found guilty of wanton murder while in the course of drug trafficking, he must have been aware of and consciously disregarded a substantial and unjustifiable risk that someone would be killed in a car accident if he trafficked in cocaine."  The Kentucky Supreme Court and the district court agreed that this is not an accurate statement of Kentucky law.

Kentucky law defines the mental state of wantonness:

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

K<small>Y</small>. R<small>EV</small>. S<small>TAT</small>. A<small>NN</small>. § 501.020(3).

The Kentucky Supreme Court noted that "[s]ince intent is not an element of wanton murder, the commission of the underlying offense does not supply the mens rea necessary to convict of intentional murder. Instead, the facts concerning the underlying felony and the defendant's participation therein may satisfy the element of aggravated wantonness necessary to convict of wanton murder." *Graves*, 17 S.W.3d at 863. The district court had no trouble ruling that a reasonable factfinder could have found the presence of aggravated wantonness. The district court stated that "'Woods created the entire situation that occurred that evening *by the manner in which he conducted the drug transaction*,' including attempting to cheat Thomas, endeavoring to escape, and engaging in a high-speed running gun battle."

Thus, the question is not simply whether the evidence was sufficient to establish that Woods was aware of or consciously disregarded a substantial or unjustifiable risk that someone would be killed by his trafficking in cocaine, but whether the evidence was sufficient to establish that by trafficking in cocaine in the way he did, Woods created such a risk. This was not a typical street-level transaction; this incident involved a high-speed chase and an exchange of gunfire. It was not unreasonable for a jury to conclude that such activity satisfied the element of wantonness. The district court summarized this point by noting that "[i]t is foreseeable that a determined and dangerous pursuit would ensue when one party to a $27,000 cocaine transaction attempts to abscond without honoring his end of the bargain, and a failure to appreciate the concomitant risks could

reasonably be deemed wanton." We agree with the district court's conclusion that petitioner's behavior was wanton.

Next, Woods argues that the fatal car crash was not part of the drug transaction. The Kentucky Supreme Court rejected this argument, stating that "[a] reasonable jury could (and obviously did) conclude from the facts of this case that the cocaine transaction was still ongoing when Woods's vehicle driven by Graves collided with the McDonald vehicle." *Graves*, 17 S.W.3d at 863.

Woods argues that this conclusion "defies reason" because the "crash which killed the McDonalds occurred 4 1/2 miles from the location where Woods absconded with the $27,000 in cash from Thomas." He asserts that "[i]t again defies reason to conclude that a rational fact finder could determine that the frantic attempt to escape from Thomas as Thomas pursued Woods' car at high speed, all the while firing a gun out the window at the fleeing car, was part of the ongoing drug transaction."

We conclude that petitioner's argument lacks merit for the following reasons stated by the district court:

> A reasonable jury could have found that the drug transaction, which was initiated in the Trixie's parking lot, was still in progress throughout the chase and when the crash occurred. Drug trafficking includes selling and transferring . . . It is not manifestly unreasonable to conclude that the chase was an attempt to complete the trade. Thomas had given the petitioner money for cocaine, but he had not yet received anything in exchange, and the contemplated transaction therefore had not yet been consummated when the accident necessarily terminated the petitioner's attempted flight.

Finally, Woods insists that Graves, the driver of his car, is solely responsible for the deaths of the McDonalds. He argues that the "intervening factors following the supposed cocaine sale are substantial, and were largely unpredictable to Woods . . . It was plainly unreasonable to hold that a rational trier of fact could determine beyond a reasonable doubt based on the evidence introduced at trial, that Woods, a back seat passenger, caused the deaths . . . ." Specifically, Woods argues that the court erred by not requiring a finding that he acted with "an extreme indifference to human life."

The Kentucky Supreme Court viewed this argument as an objection to the jury instructions and held that the "instruction given by the trial judge comports with the language of the statute . . . ." *Graves*, 17 S.W.3d at 864. Furthermore, the Kentucky Supreme Court concluded that Woods had not preserved this error. *Id.* Nevertheless, the district court addressed the merits of the argument and rejected it, stating that "[a] reasonable jury could have found that the petitioner caused the victims' deaths, even though he was not driving the automobile that struck theirs." The district court specifically rejected petitioner's defense regarding "intervening factors":

> The purported "intervening factors" are part of the circumstances manifesting extreme indifference to human life that the petitioner created and that culminated in the deadly car accident. A reasonable trier of fact could conclude that the circumstances arose directly from the petitioner's decisions to take the money without giving cocaine in exchange, attempt to escape from the intended purchasers, and engage in a gun battle during that attempted escape. It is not unreasonable to find, therefore, that the petitioner's wanton behavior caused the resulting deaths.

Given the circumstances surrounding the drug transaction and deaths, we hold that a reasonable finder of fact could conclude that petitioner's behavior caused the deaths.

III.

Defendant argues that, regardless of the merits of petitioner's claim, the petition itself was not filed within the statute of limitations and therefore should be dismissed as time-barred. At oral argument, petitioner's counsel conceded that the petition was not filed within the statutory time limit, but argued that Woods was entitled to equitable tolling. Because we conclude that the petition lacks merit, we need not address its alleged untimeliness.

IV.

For these reasons, we affirm the district court's denial of the petition for a writ of habeas corpus.